IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GINA E. GRAY,                    §
      Plaintiff,          §
                                 §
v.                               §          CIVIL ACTION NO. H-05-3530
                                 §
UNITED STATES OF AMERICA,        §
      Defendant.          §

## MEMORANDUM AND ORDER

Pending before the Court is Defendant United States of America's Motion for Summary Judgment ("IRS's Motion") [Doc. # 11].[1]  Plaintiff Gina E. Gray ("Gina") has also filed a Motion for Summary Judgment ("Gray's Motion") [Doc. # 21].[2]  The Court has considered the pleadings, the evidence of record, and the applicable law. The IRS's Motion will be **granted in part** and Gina's Motion is **denied**.

## I.   BACKGROUND

### A.   Factual Background

The relevant facts are, unless otherwise noted, undisputed.  Plaintiff Gina Gray ("Gina") and her husband, Thomas Gray ("Thomas"), filed joint personal federal

---

[1]     Plaintiff Gina Gray has responded [Doc. # 20].

[2]     The IRS has filed  a single pleading [Doc. # 25] as both a response to Gray's Motion and a reply to Gina's response to the IRS's Motion.

income tax returns for the tax years 1994 through 1997.  They litigated their tax liability for those years before the United States Tax Court, resulting in a series of stipulated decisions under which Thomas was deemed liable for certain tax deficiencies but Gina was held to be an "innocent spouse" pursuant to 26 U.S.C. § 6015(b) and (f).[3]  The stipulated decision for tax year 1994 found a total deficiency of over $200,000, but no joint liability due to the operation of § 6015.  *See* Decision, *Gray v. Comm'r of Internal Revenue*, No. 12139-98 (October 26, 1998), *id*. at 6.  The Grays continued to file jointly and reported overpayments for the years 1998, 1999, 2001, 2002, and 2003 (the "overpayments").  The Internal Revenue Service ("IRS") applied all these overpayments, totaling over $20,000, to Thomas's 1994 deficiency.

In 2005, Gina timely filed a claim with the IRS seeking a refund of her interest in the overpayments.  The IRS determined that Gina was entitled to relief for a portion of the overpayments for 2001, 2002, and 2003, and transferred a share of the

---

[3]     Stipulated Decisions, Exhibit 1 to the IRS's Motion, at 7.  "Generally, spouses who choose to file a joint return are subject to joint and several liability for tax deficiencies under the Internal Revenue Code.  Recognizing that joint and several liability may be unjust in certain circumstances, Congress authorized relief from such liability under the 'innocent spouse' provision, 26 U.S.C. § 6015."  *Cheshire v. Comm'r of Internal Revenue*, 282 F.3d 326, 331 (5th Cir. 2002) (citation omitted).  Where a taxpayer signs a joint return but was unaware that the return understates the tax liability, § 6015(b) relieves that spouse of liability for the deficiency.  It requires that, "taking into account all the facts and circumstances, it is inequitable to hold [the innocent spouse] liable for the deficiency in tax . . .  attributable to such understatement."  26 U.S.C. § 6015(b)(D).  Section 6015(f) "authorizes the Secretary of the Treasury . . . or his delegate to grant equitable relief from joint and several liability when relief is unavailable under § 6015(b) and (c)."  *Cheshire*, 282 F.3d at 332.

overpayments that had been applied to Thomas's 1994 deficiency to Gina as a refund. She then filed this suit, alleging that when the IRS calculated her share of the overpayments in the years 1998 through 2003, it failed to properly take into account Texas's community property law. The IRS admits that Gina is entitled to a refund. The dispute centers on the method of calculating the refund. Each party seeks summary judgment, asking the Court to determine the correct method of calculating Gina's refund as a matter of law. The parties represent that there are no material factual issues for trial, although certain elements of the Grays' returns are disputed.[4]

## B.   Legal Background

In Texas, marital property consists of all property that a spouse brings into the marriage or acquires during the marriage. Marital property can be characterized as separate, community or mixed. *See Hillery v. Hillery*, 342 S.W.2d 565, 567 (Tex. 1961); *Gleich v. Bongio*, 99 S.W.2d 881, 883 (Tex. 1937). "Separate property" is property acquired before marriage, by devise or descent or gift. TEX. CONST. ART 16, § 15; TEX. FAM. CODE §3.001. All property acquired during marriage is presumed to be "community property." TEX. FAM. CODE § 3.003(a).

Under community property principles, each spouse owns a 50% interest in all community property regardless of which spouse earned or otherwise acquired that

---

[4]     *See* Gray's Motion, at 4-5.

property. *See Carnes v. Meador*, 533 S.W.2d 365, 371 (Tex. App.– Dallas 1975, writ ref'd n.r.e.). Thus, the 50% ownership interest of the non-liable spouse is available to creditors of the liable spouse for his separate obligations, even though the non-liable spouse has no personal liability to the creditor.

In Texas, there is also a unique marital property concept referred to as management rights. Management rights fall into two categories: sole management rights and joint management rights. TEX. FAM. CODE § 3.102. A spouse has sole management rights over community property that would have been his or her separate property had he acquired it while he was single. TEX. FAM. CODE § 3.102(a); *Douglas v. Delp*, 987 S.W.2d 879, 883 (Tex. 1999). That is, such property is separate for purposes of management rights. Sole management community property includes (I) personal earnings; (ii) revenue from separate property; (iii) personal injury damages; and (iv) increases in, mutations of, and revenue from all community property that is subject to a spouse's sole management, control and disposition. TEX. FAM. CODE § 3.102(a). Community property not subject to the sole management, control, and disposition of one spouse is joint management community property. The sole management community property of a non-liable spouse is **not** available to pay separate obligations of a liable spouse. TEX. FAM. CODE §3.202.

The determination of management rights over spouses' property is therefore relevant to the scope of liabilities to which the property may be subject.  In particular, community property owned by a non-liable spouse may be subject to the separate obligations of the liable spouse if the latter individual has sole management rights to that community property.[5]  A creditor of a liable spouse may satisfy the debt from all of the liable spouse's sole management community property and all of the couple's joint management community property, but none of the non-liable spouse's sole management community property.  *See* TEX. FAM. CODE § 3.202(b), (c).  Unlike ordinary creditors, however, the IRS may reach the liable spouse's ownership interest in community property regardless of the non-liable spouse's sole management interest.  *See United States v. Mitchell*, 403 U.S. 190, 205 (1971) (holding that IRS may reach liable spouse's ownership share of community property in satisfaction of a separate debt whether or not some of that share is subject to the sole management of an innocent spouse); *Medaris v. United States*, 884 F.2d 832, 834 (5th Cir. 1989) (holding that IRS may additionally reach liable spouse's entire sole management share, including that portion attributable to non-liable spouse's ownership share).

---

[5]      Property liability is to be distinguished from a spouse's personal liability. Property liability attaches to the property rather than to an individual. Property owned by a spouse can be seized even though he is **not** personally liable on the debt. *See, e.g., Nelson v. Citizens Bank & Trust*, 881 S.W.2d 128, 131 (Tex. App.– Houston [1st District] 1994, no writ).

This dispute turns on the interaction of the sole management property concept with community property.  As noted, the sole management interest is distinct from the "ownership" interest in that property.  Each spouse maintains a 50% ownership interest in all community property, regardless of the management interest in that property.  Thus, a married individual "owns" only 50% of his personal wages, which are that individual's sole management community property, because the ownership interest is divided among the community.  Similarly, that individual owns 50% of the spouse's wages, even though those wages are the spouse's sole management community property.

Jointly filing taxpayers from a community property state are responsible for taxes on the 50% ownership share of the community property.  *Ragan v. Comm'r of Internal Rev.*, 135 F.3d 329, 333 (5th Cir. 1998) ("each spouse is considered the recipient of one-half of the wages upon which taxes are withheld . . .." (quoting Rev. Rul. 80-7, 1980-1 C.B. 296)).  These taxpayers nevertheless maintain their original separate sole management interest in their respective incomes and in any overpayment.  *Id.* (citing Rev. Rul. 74-611, 1974-2 C.B. 399).  The "source of an overpayment of income tax determines the character of the refund, with a refund of excess withholding tax merely being a repayment of earnings from employment.  *Id.* (quoting *In re Bathrick*, 1

B.R.428, 430 (Bankr. S.D. Tex. 1979); *see Gehrig v. Shreves*, 491 F.2d 668, 671-72 (8th Cir. 1974).

The IRS generally is entitled to take tax overpayments and apply them to the filer's outstanding tax liabilities. 26 C.F.R. § 301.6402-1.  In Texas, however, because of sole management and community property principles, the IRS may *not* merely credit an entire joint overpayment to a tax deficiency for which an innocent spouse is not liable.  If a joint overpayment is so credited, an innocent spouse may recover from the IRS that portion of the overpayment allocable to both her ownership and her sole management interest as a refund.  *See* Rev. Rul. 74-611; *see* Rev. Rul. 2004-74.  The IRS may only look to all community property in which a liable spouse has *either* an ownership or management interest, so long as the IRS is otherwise authorized to take the assets. *See Ragan*, 135 F.3d at 333.

## II.   ANALYSIS

### A.   Calculation of an Innocent Spouse's Refund

Gina claims she is entitled to larger shares of the refunds that the IRS applied to Thomas's tax liability.  The IRS disagrees.  The dispute here is over the method of calculating how much of the overpayment should be attributed to Gina's sole management community property.  The IRS's method takes account of Texas's community property principles and deems Gina to be the legal owner of half of the

couple's aggregate income.   It uses that ownership interest in calculating Gina's refunds.   Gina proposes an alternative method, under which she is responsible for paying tax only on the income she personally generated, *i.e.*, her sole management community property.   Because Gina earned less than her husband over the relevant period, her approach thus minimizes her share of the tax liability in the disputed years. As a result, she contends, she substantially overpaid her share of the taxes due and thus claims larger portions of the overpayments as her sole management community property, which she argues is not allocable to her husband's deficiency.   Gina's proposed method of calculation is not supported by the IRS's revenue rulings[6] or any other legal authority.   The Court accordingly adopts the IRS's methodology, described below.

---

[6]     Revenue rulings "are odd creatures unconducive to precise categorization in the hierarchy of legal authorities.  They are clearly less binding on the courts than treasury regulations or Code provisions, but probably (and in this circuit certainly) more so than the mere legal conclusions of the parties." *Estate of McLendon v. Comm'r of Internal Revenue*, 135 F.3d 1017, 1023-24 (5th Cir. 1998).  Although not binding precedent, courts "generally accord significant weight to the determinations of the IRS in its revenue rulings." *St. David's Health Care Sys. v. United States*, 349 F.3d 232, 239 n.9 (5th Cir. 2003).  "In this circuit, revenue rulings are generally 'given weight as expressing the studied view of the agency whose duty it is to carry out the statute'" *Estate of McLendon*, 135 F.3d at 1024 n.10 (quoting *Foil v. Comm'r of Internal Revenue*, 920 F.2d 1196, 1201 (5th Cir.1990) (quoting *United States Trust Co. v. Internal Revenue Service*, 803 F.2d 1363, 1370 n. 9 (5th Cir.1986))).

### 1.      Summary of IRS's Method

To provide guidance in light of the complexity of Texas community property and sole management concepts, the IRS issued Revenue Ruling 2004-74, 2004-2 C.B. 84, which sets forth the applicable procedure for allocating overpayments for Texas taxpayers.  In an attempt to simplify the calculations, the IRS established a five-step process.

Step 1 requires determination of the "source of the overpayment," or an accounting of what funds were used to pay the taxes.  These may include income tax withholding, estimated tax payments, and other credits.  Rev. Rul. 2004-74, 2004-2 C.B. at 85 col. 3.

The second step is to characterize each source as either community or separate property.  *Id.* at 85 col. 3.  There is no dispute at Steps 1 and 2; the Grays paid all their taxes from community property.

Step 3 of Revenue Ruling 2004-74 requires that there be an "offset [of] the liable spouse's share of the overpayment from a community property source against the liable spouse's separate tax liability."[7]  Step 3 adds:  "Under Texas law, each spouse has a present and equal interest in all community property."  *Id.* at 86 col. 1; *see id.* at 85 col. 1 (discussing Rev. Rul. 85-70).

---

[7]      The "liable spouse" is the spouse liable for the tax deficiency, in this case Thomas.

In Step 3, essentially the IRS splits the overpayment in half between the liable and non-liable spouses by applying the "one-half rule" of Revenue Ruling 85-70, *see id.* at 83 col. 1 (citing Rev. Rul. 85-70), because as a matter of community property law one-half of *each* spouse's income and the associated taxes that each spouse paid are attributable to the liable spouse.  The IRS is therefore entitled to a minimum of 50% of the overpayment attributable to community property.

The Court describes next how, mechanically, the IRS recommends this halfway split be accomplished.  The following calculations are necessary to perform the analysis in Step 4; the Step 3 calculation could be accomplished simply by dividing the community property in half.  Nevertheless, the Court discusses this sole management analysis here because the IRS does so in its explanations of how 2004-74 calculations should be performed.  In applying Step 3, the IRS notes that Revenue Ruling 80-7 is used to determine the portion of the community property joint tax liability that arises from the liable spouse's sole management property.  This determination also is deemed the calculation of the portion of the overpayment attributable to each spouse's sole management community property.  There are several steps required.  *See* Rev. Rul. 2004-74, 2004-2 C.B. at 85 cols. 1-2, and 86 col. 1 (citing Rev. Rul. 80-7).

First, there must be a calculation of each spouse's sole management tax liability. There is no equation prescribed by statute or regulation.  Revenue Ruling 80-7

concludes that one must look to analogous regulations to determine the proper calculation for the spouse's separate liability.  Rev. Rul. 80-7, 1980-1 C.B. at 297 col. 1 (citing 26 C.F.R. §§ 1.6654-2(e), 20.2053-6(f)).  "If the spouses file a joint return showing an overpayment[,] then the amount that may be credited to one spouse's separate [tax] liability is computed by subtracting [that] spouse's share of the joint [tax] liability [*i.e.*, the couple's tax obligation when filing jointly], determined in accordance with the separate tax formula, from the spouse's contribution toward the joint liability."  *Id.* at 297 col. 2.  This "separate tax formula" requires a determination of what each spouse *would* have paid if he or she had filed as "married filing separately."  *See* 26 C.F.R. §§ 1.6654-2(e) (calculating, as relevant, ratio of "the amount of the tax for which the taxpayer would have been liable . . . to the sum of the taxes for which the taxpayer and his spouse would have been liable had each spouse filed a separate return for the preceding taxable year"); 20.2053-6(f) (calculating, as relevant, "the total of the amounts for which the decedent and his spouse would have been liable if they had both filed separate returns for that period").

Once the liable spouse's separate liability is determined, that figure is divided by the sum of the two spouses' separate tax liabilities[8] as hypothetically calculated.

---

[8]     Each spouse's separate tax liability must be computed, and thus each spouse's sole-management community property tax liability is known at this stage.

The resulting fraction is multiplied by the joint tax owed (for the married couple filing jointly), which equals the portion of the total joint tax for which the liable spouse is responsible (*i.e.*, the liable spouse's sole management property liability for the couple's joint taxes). The formula is depicted as follows:

$$\frac{\text{Liable spouse's hypothetical married-filing-singly liability}}{\text{Total of both spouses' hypothetical married-filing-singly liabilities}} \; X \; \text{Tax liability of spouses filing jointly} \; = \; \text{Liable spouse's portion of joint tax liability}$$

Having computed the proportion of the tax liability owed by the liable spouse, the liable spouse's share of the overpayment is calculated by deducting his actual payment towards the couple's joint tax liability (*i.e.*, his "contribution")[9] from his share of the joint tax liability, as set forth in the formula below:

$$\text{Liable spouse's separate tax liability contribution} \; - \; \text{Liable spouse's portion of joint tax liability} \; = \; \text{Liable spouse's sole management share of overpayment}$$

The result here is the liable spouse's share of the overpayment "attributable to community property subject to [that spouse's] sole management, control, and disposition." Rev. Rul. 2004-74, 2004-2 C.B. at 86 col. 1 (citing Rev. Rul. 80-7).

---

[9] In all years but 1999, the Grays' contributions were their individual withholdings plus certain tax credits, all allocable to an individual spouse. In 1999, the Grays made an additional payment with their return, in addition to their withholdings for the year. The Court does not address the method of allocating such payment between the spouses.

As noted, fundamentally, in Step 3 the IRS must determine the liable spouse's share of the overpayment derived from a community property source and offset it against that spouse's separate liability.  Also as noted above, at a minimum, in Texas and pursuant to Revenue Ruling 85-70, the IRS "may offset the liable spouse's 50-percent interest in the overpayment from a community property source to satisfy the liable spouse's separate tax liability."  *See, e.g.,* Rev. Rul. 2004-74, 2004-2 C.B. at 85 col. 2, 3 (citing and applying Revenue Ruling 85-70, 1985-1 C.B. 361).  To facilitate calculations in the next step, Step 4, the IRS therefore takes half of each spouse's portion of the overpayment that is attributable to the respective spouses' sole management community property or income as calculated above under Revenue Ruling 80-7.

"The fourth step is to determine whether, under state law, the Service may reach any other portion of the overpayment from a community property source."  Rev. Rul. 2004-74, 2004-2 C.B. at 85 cols. 2-3 (citing Rev. Rul. 85-70).  In Step 4, because "under Texas law, the Service may reach all community property subject to Liable Spouse's sole management, control, and disposition," *Id.* at 86 col. 2,  the IRS is entitled to take, in addition to the first 50% of the liable spouse's sole management community property share of the overpayment, any other part of the overpayment attributable to the liable spouse's sole management community property contribution.

That portion of the overpayment is derived from the liable spouse's sole management property and therefore is available to cover that liable spouse's separate tax debts. *See* Rev. Rul. 2004-74, *passim*; TEX. FAM. CODE § 3.202(c) ("The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage.").

The fifth step, determining "whether the Service may . . . reach any portion of the overpayment from a separate property source," is not relevant to this case; no separate property (or income from separate property) is at issue.

In summary, therefore, after consideration of the applicable Fifth Circuit case law, Texas law community and sole management property principles, the applicable IRS revenue rulings, and the Grays' financial circumstances, the Court concludes that the entirety of Thomas's sole management community property share of each overpayment must be paid to the IRS for his tax deficiencies. The IRS has proposed the proper method for calculating that amount.

In any year that Gina is entitled to a share of the overpayment, which can occur only when her actual contribution to the joint tax payments exceeded her separate tax liability (*i.e.*, her sole management community property tax liability), she is entitled to keep that share of her community property ownership share of the overpayment that she can show was attributable to her sole management property tax liability. To receive a

refund of any portion of the overpayment as an innocent spouse, Gina must show that she has both an ownership *and* sole management interest in that portion of the overpayment.

### 2.    Gina's Proposed Method and Objections to the IRS's Process

Gina agrees with the IRS's methodology to some extent.  She concurs, for instance, that the IRS is entitled to take one-half of the overpayment as Thomas's ownership share of the spouses' community property.[10]  However, she disagrees with the IRS's method of calculating her sole management community property share of the overpayment, and the application of Revenue Ruling 80-7 to determine that share. Gina acknowledges that Ruling 80-7 relies on a hypothetical separate tax calculation. But because the calculation is set out without reference to federal tax regulations, she contends that the separate tax formula in the second part of the two-prong test of Revenue Ruling 80-7 (and thus Step 4 of Revenue Ruling 2004-74) should be tied only to each spouse's management rights under Texas law, as opposed to the 50% community property ownership split of the couple's aggregate income.  Gina further argues that "sole management income is allocated to the spouse who earned same as

---

[10]    *See* discussion of Steps 3 and 4 of Revenue Ruling 2004-74, *supra.*

if it was his separate property."[11]   There is no question that much of the couple's income, such as her husband's wages, interest on his holdings, profits from his business, and his gambling winnings are his sole management community property.[12] Gina proposes that her separate tax liability under this method should be based only on *her* personal income, which over the years in question is significantly less than fifty percent of the aggregate.  If Gina's hypothesis is correct, then her hypothetical separate tax liability is significantly lowered and her sole management share of the joint tax liability, as reported in the Grays' tax returns, is minimized.  Because her contributions remain the same (or even increase, depending on the tax treatment of various credits), under this method she gains a larger sole management share of the overpayment, and is due a larger refund than that calculated by the IRS for each year in issue.  Gina asserts that her proposed result is consistent with Texas and Federal case law, as well as the relevant IRS revenue rulings.

The parties therefore agree that the IRS may take the share of the overpayment subject to Thomas's *ownership* interest, which is half the overpayment.   What is disputed is how to calculate whether Thomas has any sole management interest in the portion of the overpayment in which Gina has community ownership.  The parties thus

---

[11]     Gray's Motion, at 17.

[12]     *See, e.g.,* Plaintiff's Computations for Tax Year 1999 ("Plaintiff's 1999 Calculations"), Gray's Motion, Exhibit VI, at 2.

dispute how much the IRS may take as a result of Step 4 of Revenue Ruling 2004-74 (the equivalent of Step 2 of Revenue Ruling 80-7).

The Court is unpersuaded by Gina's analysis and finds her interpretation of *Ragan v. Comm'r of Internal Revenue*, 135 F.3d 329 (5th Cir. 1998), misplaced.  As Gina correctly argues, *Ragan* establishes that a joint tax return cannot reallocate an individual's sole management community property  to his spouse.  Gina, however, misapplies that rule.  In *Ragan*, the taxpayers, David and Jackie Ragan, were entitled to a refund for tax year 1980.  David had filed for bankruptcy, and pursuant to a settlement the IRS, paid the 1980 refund to the bankruptcy trustee.  *See id*. at 331-32.  Jackie contested this payment, arguing that she was entitled to one-half of the refund as her share of the community property.  The court of appeals disagreed, reasoning that she was only entitled to whatever share of the refund was "community property under her sole management and control."  *Id*. at 333.  The court held that none of the refund was attributable to her sole management, citing "[p]ersuasive authorities"  for the proposition that "the source of an overpayment of income tax determines the character of the refund, with a refund of excess withholding tax merely being a repayment of earnings from employment."  *Id*. (citing *In re Bathrick*, 1 B.R. 428, 430 (Bankr. S.D. Tex. 1979); *Gehrig v. Shreves*, 491 F.2d 668, 671-72 (8th Cir. 1974)).  "Since personal earnings, while community property, are subject to the sole management and control

of the spouse who earned them, the tax refund generated from the excess withholding of those earnings is as well." *Id.* (citing *Bathrick*, 1 B.R. at 430).[13]  Because the 1980 refund was generated entirely from David's withholdings, the court of appeals concluded that Jackie had paid none of the taxes giving rise to the refund and none was attributable to Jackie's sole management community property.  Accordingly, she was not entitled to any portion of the refund.  *See id.*  In *Ragan*, the result was simple:  David's share of the joint tax liability was offset against the tax contributions he personally made from his sole management community property and those payments were 100% of the couple's tax payments that year.  The resulting overpayment remained his sole management community property, and was therefore allocable to his bankruptcy settlement under Step 2 of Revenue Ruling 85-70 and Step 4 of Revenue Ruling 2004-74.

In contrast with *Ragan*, here some of the community income and tax withholdings were Gina's.  It is therefore necessary to determine how much of the joint tax liability, of the parties' contributions to the taxes paid, and of the related overpayment should be attributed to each spouse's sole management income.[14]  The

---

[13]    The court concluded that "to the extent that the income is attributable to one spouse's sole management community property, the refund from the excess tax on that income is the sole management community property of that spouse." *Id.*

[14]    Calculations of this detail were unnecessary and not applied in *Ragan*.  Nevertheless, the
                                                                                        (continued...)

IRS's methodology does not transfer any of Gina's sole management property to her spouse; rather the IRS's procedure "merely calculat[es] the [t]axpayers' hypothetical separate tax liability for purposes of determining the extent to which Plaintiff contributed to the overpayment."[15]  Gina's own cited authorities permit the IRS to assume that, had she filed separately, she would have been liable to pay taxes on one-half of the couple's community income, regardless of which of the spouses earned the income and regardless of the spouses' individual sole management interests.  *See Ragan*, 135 F.3d at 333.  Each spouse's individual actual contributions (under the facts presented) remain that individual's sole management community property.

Because Thomas paid some of the joint taxes from his sole management property, his share of the joint tax liability must be subtracted from his sole management property tax contributions.  The resulting amount retains its sole management characterization; it is Thomas's, and may not be transferred to Gina.

---

[14]     (...continued)
method is as applicable under the facts in *Ragan* as it is here.  One-half of David's income would fall under Jackie's ownership interest.  She would therefore be attributed some hypothetical tax liability, as she would be liable for her ownership share of the community income if the couple filed separately.  The refund due her would be her share of the overpayment minus her share of the tax liability.  The parties stipulated in *Ragan* that no part of the overpayment came from Jackie's withholdings or any other source attributable to her sole management community property.  She therefore had no sole management community property share of the overpayment, leaving her no share of the refund.  Here, as demonstrated above, the IRS uses Gina's actual contributions to determine the refund owed her.

[15]     IRS's Reply, at 9.

Similarly, none of her sole management community property is transferred to Thomas. Gina is entitled to a refund of whatever portion of the overpayment that is not Thomas's ownership or sole management share.  The Court will calculate the refund amount for 1999 as a demonstration of the correct methodology.[16]

### 3.  Application of Approved Method

Applying the five-step method of Revenue Ruling 2004-74 to tax year 1999, using the provisional figures provided by the IRS, Gina is entitled to a refund of $523 for that year.   The first two steps are simple and undisputed.   In the Step 1, the overpayment resulted from the filers' withholdings and payments with the return.  As to the second step, all the withholding payments were community property.

In Step 3, the total value of the 1999 overpayment, $2,920, is community property.   Thomas accordingly has an ownership interest in one-half of that sum, $1,460.[17]  The IRS indisputably is entitled to Thomas's ownership share, which may

---

[16]     The Court's calculation is merely demonstrative, and is not binding upon the parties.  It relies on the figures set out in the Appendix to the IRS's Motion.  *See* Computations of the Overpayment to be Refunded to Plaintiff ("IRS's 1999 Computations"), 1999 Tax Year, IRS's Motion, Appendix, at 99.  Gina disputes the underlying figures for some years, for example by adding an unutilized child care credit to her contributions in 1998.  *See* Plaintiff's Computations for Tax Year 1998 ("Plaintiff's 1998 Calculations"), Gray's Motion, Exhibit V, at 3; Gray's Motion, at 4.   The parties acknowledge that any such differences are immaterial.  *See* Gray's Motion, at 5.  But, because there are discrepancies, this calculation is merely a demonstration of the approved methodology.  The Court does not determine the validity of either party's figures.

[17]     *See* IRS's 1999 Computations, at 100; Plaintiff's 1999 Calculations, 3.  Through application
(continued...)

be applied to his outstanding tax deficiency.  The parties dispute how the remaining $1,460 of the overpayment should be allocated according to their sole management community property interests.

For Steps 3 and 4, it is necessary to determine Thomas's sole management share of the joint tax liability.  Then, Thomas's sole management share of the joint tax liability must be offset against his sole management community property contributions to the joint tax liabilities in order to determine his sole management share of the overpayment.  The IRS may reach any of the overpayment that is allocable to Thomas's sole management community property portion of the joint tax liability.

To determinate the spouses' respective sole management tax liabilities, their hypothetical separate tax liabilities must be calculated, which in turn requires Thomas's and Gina's hypothetical calculations of taxes owed  as if each had prepared returns as "married filing separately."  Then these two separate tax obligations are added together, and the proportion of Thomas's hypothetical obligation to the couple's aggregate separate tax obligations is calculated.  This fraction is multiplied by the

---

[17]     (...continued)
of the one-half rule of Step 3 in Revenue Ruling 2004-74 (and Step 1 of Revenue Ruling 85-70 incorporated by reference), Thomas's one-half ownership interest in the overpayment, $1,460, was allocated to his tax deficiency.

couple's joint tax obligation, which reveals Thomas's sole management portion of the Grays' joint tax liability.

Using 1999 figures, Thomas's separate tax liability was a total of $5,693.[18] This amount is used to determine his share of the actual joint tax liability with the formula from Revenue Rulings 85-70 and 2004-74:

$$\frac{\text{Thomas's hypothetical married-filing-singly liability}}{\text{Total of both spouses' hypothetical married-filing-singly liabilities}} \ \text{X} \ \text{Grays' joint tax liability} \ = \ \text{Thomas's portion of Grays' joint tax liability}$$

The 1999 calculation is as follows:

$$\frac{\$5,693 \ \text{[Thomas's separate tax liability]}}{\$10,116 \ \text{[Total of Grays' separate tax liabilities]}} \ \text{X} \ \$10,123 \ \text{[joint tax liability]} \ = \ \$5,697 \ \text{[Thomas's joint tax liability]}$$

In Step 4, it is necessary to compare what Thomas actually contributed to pay the Grays' tax liability and determine what portion of the overpayment is derived from Thomas's sole management contributions. Thomas in fact contributed $7,570 to the 1999 tax payment, which contribution was made from his sole management community

---

[18]   *See* IRS's 1999 Computations, at 99. Gina would have been liable for a smaller amount, $4,423. The total of the Grays' separate tax liabilities is $10,116 ($5,693 + $4,423). The Gray's hypothetical separate tax liabilities are not equal, despite the community split, because of the tax treatment of certain deductions and exemptions. For instance, Gina benefitted from a child tax credit in 1998 that was not allocated to Thomas. *See id.*

property.[19]  Subtracting his portion of the joint tax liability, $5,697, from that amount results in Thomas's share of the overpayment.  Thomas's contributions were made from his wages, making them his sole management community property, and the deduction of tax payments from that amount does not change their characterization.   The overpayment drawn from his contributions, $1,873 in 1999, remains Thomas's sole management community property.  The IRS may allocate that portion of the refund to Thomas's tax deficiency.  The IRS is entitled to take in satisfaction of Thomas's tax liabilities the portion of Gina's $1,460[20] allocable to her community property ownership interest equal to the amount of Thomas's sole management share of the overpayment that exceeds Thomas's ownership share of the overpayment (*i.e.*, 50% of the overpayment).  *See* 26 C.F.R. § 301.6402-1.  If Thomas's sole management share had been less than his ownership interest, the IRS would have been entitled only to Thomas's ownership interest.

---

[19]     The contribution came partially from his withholdings, and partially from a subsequent payment.  *See* IRS's 1999 Computations, at 100.  The IRS allocates the subsequent payment between the spouses, but because Gina indicates that she cannot accurately split the payment, she attributes it entirely to Thomas (the application most favorable to the government).  *See id.*; Plaintiff's 1999 Calculations, at 3.   The Court utilizes the IRS's figures for this demonstration, as discussed above.  The parties may dispute this allocation, which would alter the amount of the refund in 1999.

[20]     *Id.*; IRS's 1999 Computations, at 100.

Gina is entitled to whatever is left of the overpayment after Thomas's sole management and ownership shares of the overpayment are allocated to his tax deficiency.[21]   For 1999, that amount is $523.

## III.   CONCLUSION

As a matter of law, consistent with state and federal law, appellate precedent, and the applicable revenue rulings, the Court adopts the IRS's methodology for allocating the overpayments between Thomas and Gina Gray as the correct approach. Summary judgment is appropriate on the question of how Gina's refunds should be computed for the years in question.   The Court does not perform the specific calculations necessary for the tax years in dispute, except as a non-binding example of the proper calculation.   The parties shall endeavor to agree on the calculations in light of this Memorandum and Order, and shall submit by **May 25, 2007**, a proposed final judgment for all the tax years in issue.   If the parties cannot agree on the calculations, they shall submit a joint report containing the parties' respective positions on the proposed calculations.   It is therefore

---

[21]     There is no need to reach the Step 5 of Revenue Ruling 2004-74 because there is no separate property or income from separate property at issue.

ORDERED that Defendant United States of America's Motion for Summary Judgment [Doc. # 11] is **GRANTED** in accordance with this Memorandum and Order. It is further

ORDERED that Plaintiff Gina's Motion for Summary Judgment [Doc. # 21] is **DENIED**.  It is further

ORDERED that the parties will provide the Court with a status report on or before **May 25, 2007**, in order to determine whether and how this case shall proceed.

**SIGNED** at Houston, Texas, this **3**$^{rd}$ day of **May, 2007**.

Nancy F. Atlas
United States District Judge